IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TODD SKOGLEY,

    **Plaintiff,**

v.

GATEWAY INFRASTRUCTURE
SERVICES, LLC and BRUCE LONG,

    **Defendant.**                              Case No.07-cv-199-DRH

**ORDER**

**HERNDON, District Judge:**

**I. INTRODUCTION**

    This matter comes before the Court on plaintiff Todd Skogley's Motion to Remand (Doc. 7), to which defendants Gateway Infrastructure Services, LLC ("Gateway") and Bruce Long have timely filed their opposing Response (Doc. 15). Plaintiff brings this suit against Defendants for alleged violations of the Illinois Wage Payment and Collection Act ("IWPCA"), **820 ILL. COMP. STAT. 115/1 - 115/16**. Specifically, Plaintiff alleges that while he was employed by Defendants, they attempted to take certain improper deductions from the compensation he was owed, as well as failed to pay his wages and final compensation in the time required by statute (Doc. 2, p. 7 - Complaint, ¶¶ 8 & 11). Plaintiff originally filed his Complaint (Doc. 2) in the Circuit Court of Madison County, Illinois. Defendants timely removed this matter (Doc. 2) on the basis of federal question jurisdiction, **28 U.S.C. § 1331**,

asserting that Plaintiff's claims were completely pre-empted by Section 301 of the Labor Management Relations Act ("LMRA"), **29 U.S.C. § 141**, as resolution of such claims would require the Court to interpret certain provisions of the Collective Bargaining Agreement ("CBA") made between Gateway and the International Union of Operating Engineers Local 520, of which Plaintiff is a member (*see* Doc. 2, pp. 2-3 ¶¶ 8 & 11). At the heart of the dispute regarding pre-emption is whether resolution of Plaintiff's claims would require interpretation of the CBA or whether Plaintiff's claims are outside of it.

Plaintiff has also filed an accompanying Motion for Hearing (Doc. 28) regarding certain pending motions, including the Motion to Remand. However, despite Plaintiff's attempt at a nostalgic return to the legend of this Court's days gone by when his predecessor would "hold Court" and, with rapt attention, lawyers of every description would gather around to watch and listen, carefully, since they might be called on to offer up an answer to a Socratic question tossed their direction, we now live in a different world. This case is well enough briefed that the Court's overwhelming criminal docket does not have to be breached to schedule time for oral argument that the Court feels is unnecessary to resolve the instant Motion. Thus, the Court The reasoning set forth in this Order causes the Court to find that this matter does not require interpretation of the CBA and thus, the case should be remanded.

## II. DISCUSSION

### A. Legal Standard

#### 1. Removal

The removal statute, **28 U.S.C. § 1441**, is construed narrowly, and doubts concerning removal are resolved in favor of remand. ***Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993)**. Defendants bear the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. ***See In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir. 1997)**. "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" ***Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir. 1997)(citations omitted)**. However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**.

#### 2. Section 301 Pre-Emption

Under the "well-pleaded complaint rule," it must be evident from the face of a properly pleaded complaint that a federal question is at issue; only this will give rise to federal-question jurisdiction. ***Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)(a case may not be removed to federal court merely when a federal defense to a plaintiff's claims exists)**. However, although a plaintiff is

considered the "master of the claim," the law will not allow a plaintiff to "artfully plead[] . . . a federal claim solely in terms of state law," in an attempt to avoid federal jurisdiction. **See id., see also Tifft v. Commonwealth Edison Co., 366 F.3d 513, 516 (7th Cir. 2004)(citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 22 (1983))**. The one exception or "'independent corollary'" to the well-pleaded complaint rule, therefore, is known as the "'complete pre-emption doctrine.'" **Caterpillar, 482 U.S. at 393 (quoting Franchise Tax Bd., 463 U.S. at 22)**. When "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim,'" complete pre-emption occurs. **Id. (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987))**. Thus, once a particular area of state law becomes completely pre-empted, any claim brought pursuant to that state law will instead be considered a federal claim arising under federal law. **Id. (citing Franchise Tax Bd., 463 U.S. at 24 ("'[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law'")**.

Recognizing the importance of uniformity in labor law, Section 301 of the LMRA provides federal jurisdiction for all "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." **See 29 U.S.C. § 185(a); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403 (1988); Caterpillar, 482 U.S. at 393-94**

(citing *Avco Corp. v. Machinists*, 376 F.2d 337 (6th Cir. 1967), *aff'd*, 390 U.S. 557, 558 (1968)(" when '[t]he heart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement, that complaint arises under federal law . . . .'")(alterations in original)). In turn, courts have interpreted Section 301 as means of providing federal-court jurisdiction over suits involving collective-bargaining agreements." *Lingle*, 486 U.S. at 403 (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)). Concurrent jurisdiction over Section 301 claims lies with state courts, but federal law must be applied no matter the forum. *Id.* at 403, n.2.

A Section 301 claim may be brought when the issues deal directly with "rights created by collective-bargaining agreements" or when the issues are "'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 394 (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n.3 (1987)). Given the doctrine of complete pre-emption, any state claim also dealing with the aforementioned issues will be completely pre-empted by Section 301 of the LMRA. *See Tifft*, 366 F.3d at 516 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S., 202, 220 (1985)). Yet, if a state law claim merely *references* a collective-bargaining agreement, but does not require the Court to analyze its provisions to resolve the underlying issues of the state law claim, Section 301 pre-emption will likely not apply. *Id.*(citing *Livadas v. Bradshaw*, 512 U.S. 107, 117-18 (1994)). In this case, Defendants contend Plaintiff's Complaint is completely pre-

empted by Section 301.

**B.    Analysis**

In this case, even though Plaintiff has brought his claim under the IWPCA, removal of this action will be deemed appropriate if the Court determines Plaintiff's claim requires an interpretation of the CBA.  In turn, if the Court determines Defendants have not met their burden of showing that an analysis of the CBA is necessary to resolve Plaintiff's claim, then Section 301 pre-emption will not apply and this case must be remanded for lack of federal jurisdiction.

Attached to Plaintiff's Complaint was a letter, dated September 26, 2006, from defendant Gateway to Plaintiff (hereinafter, "Defendants' letter"), which addressed his claim for wages.  Defendants' letter provides, in pertinent part:

> Under the International Union of Operating Engineers Local 520 collective bargaining agreement, all the work you performed in the field in connection with the operation of equipment is operator work.  So, too, is all the equipment repair work you performed in the shop. *Accordingly, all amounts you were paid, including amounts denominated as "bonuses", should properly be treated as payments toward the wages you earned.*
>
> The enclosed exhibit shows the day-by-day breakdown of the disputed hours and the appropriate wage rate as established by the collective bargaining agreement.
> * * *
> Rather than question some of your reported hours, we have decided, in order to settle the wage claim, to utilize all those hours and to apply the applicable rates per the collective bargaining agreement. *We have credited the prior payments per the above*.  As such, we have included a check payable to you in the sum of $4,465.42 as and (sic.) for final payment of your wages.

(Doc. 2, p. 9 - Complaint, Ex. 1)(emphasis added to portions regarding "credits").

The exhibit to the letter, which itemized the disputed hours and subtotaled the wages owed, took three "credits" in order to arrive at the grand total of what Defendants concluded represented the total wages owed to Plaintiff for the disputed hours. The three "credits" were in the amounts of $6,000.00, $16,000.00 and $5,000.00. The subtotal of disputed wages owed Plaintiff was $31,485.42. Thus, as the letter stated, the grand total paid to Plaintiff was $4,465.42.

It is these "credits" that Plaintiff disputes were improper deductions from his compensation, withheld in violation of IWPCA. Moving for remand of this suit, Plaintiff argues that his IWPCA claim involves only a state law analysis, independent of any rights established by the CBA or interpretation thereof, contrary to Defendants' assertions (Doc. 7, p. 2). In support of the removal, Defendants argue that Plaintiff is merely attempting to craft his claims around pre-emption (Doc. 15, p. 2). Defendants believe resolution of Plaintiff's claim will substantially involve interpretation of the CBA and therefore, Plaintiff's IWPCA claim is pre-empted by Section 301 of the LMRA. Explaining that the three "credits" represented "wages previously paid for the exact same work," Defendants assert that in order to establish these credits were, instead, wrongful deductions from Plaintiff's final wages, "Plaintiff must necessarily take the position that the payments were not issued for work performed under the [CBA] but were made for some other purpose" (*Id*. at 3). If Plaintiff adopts this argument, Defendants believe the Court must then analyze Plaintiff's work performed during the disputed hours to determine if such work falls within the classes of work covered by the CBA (*Id*.).

From the briefings, the parties do not appear to dispute the wage rate applied to the disputed hours, whether the type of work can be classified as work covered by the CBA, nor do they contest the amounts calculated as to the subtotal, the three credits or the grand total of wages due to Plaintiff. What the parties do *not* agree upon is whether Plaintiff had already been paid for the exact same work, so that he would not be entitled to receive payment for such work via his claim for wages. Although Defendants argue that resolving the issue of whether these "credits" represent work already paid to Plaintiff will involve substantial analysis of the CBA, they fail to demonstrate exactly *how* the CBA is involved. No specific language or provisions of the CBA have been cited to substantiate Defendants' assertions. What appears to be at issue is not whether Plaintiff's disputed work falls under work covered by the CBA, but rather, whether Defendants have yet to financially compensate Plaintiff for such work.

Simply put, did Defendants make wrongful deductions from Plaintiff's final pay? If so, Plaintiff likely has a viable claim. Yet, the Court cannot decipher how construing the CBA is necessary in reaching the answer to this question; Defendants have not convinced the court that the CBA is anything but ancillary to its analysis. For example, even if, as Defendants suggest, these "credits" were issued for work performed under the CBA, Defendants present no evidence showing these payments were previously paid to Plaintiff (or on behalf of Plaintiff) or what provision of the CBA allows Defendants to "credit" or "withhold" wages allegedly due to Plaintiff. It is Defendants' burden to show removal was warranted by offering

competent proof that jurisdiction exists. They have not met their burden. The Court does not find Defendants provided competent proof to show that resolution of Plaintiff's claim would substantially involve interpretation of the CBA in order for Section 301 pre-emption to apply. As such, the case shall be remanded.

### III.  CONCLUSION

Defendants have failed to meet their burden of proof that federal question jurisdiction under **28 U.S.C. § 1331** exists to remove this case, as the Court concludes an analysis of the CBA unnecessary to resolve Plaintiff's claim. Instead, it appears, at least from the parties' briefings of the issues, that Plaintiff's claim can be resolved via applicable state law and thus, there is no complete pre-emption. Therefore, Plaintiff's Motion to Remand (Doc. 6) is **GRANTED**. Accordingly, the Clerk is instructed to **REMAND** this case back to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, and close the case file. Further, as the application of the complete pre-emption doctrine in this case was complex and somewhat uncertain, the Court will refrain from awarding attorneys' fees or costs to Plaintiff. Lastly, the Court hereby **FINDS AS MOOT** all remaining pending Motions in this case.

**IT IS SO ORDERED.**

Signed this 11th day of July, 2007.

/s/       David  RHerndon
**United States District Judge**